IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

```
KATRINA WILLIAMS,              )
                               )
Plaintiff,                     )
                               )   NO. 2:10-CV-317
vs.                            )
                               )
HORSESHOE HAMMOND, LLC         )
                               )
Defendant.                     )
```

**OPINION & ORDER**

This matter is before the Court on: (1) Defendant Horseshoe Hammond, LLC's Motion for Summary Judgment, filed on April 22, 2011; and (2) the Motion to Strike Plaintiff's Memorandum in Opposition to Horseshoe Hammond, LLC's Motion for Summary Judgment, filed on May 31, 2011. For the reasons set forth below, the Motion to Strike is **DENIED** and the Motion for Summary Judgment is **GRANTED.**

BACKGROUND

Plaintiff, Katrina Williams ("Williams") alleges that the defendants, Horseshoe Hammond, LLC ("Horseshoe"), Myeisha Spates ("Spates"), Karl Madayag ("Madayag"), Mike Drohosky ("Drohosky"), the Indiana Gaming Commission ("IGC"), and John Doe violated her constitutional rights under the First, Fourth, Eighth, and Fourteenth Amendments, under the color of state law. These alleged violations stem from an incident at the Horseshoe Casino on November 12, 2008, where Plaintiff, a guest of the casino, was questioned about the theft

1

of a wallet. The claims against Madayag, Drohosky, and IGC have been dismissed, and the John Doe defendant has been stricken.

Horseshoe filed the instant Motion for Summary Judgment on April 22, 2011. (DE #40). Williams filed a Response to the Motion for Summary Judgment on May 22, 2011. (DE #42). Horseshoe then filed a reply brief and a motion to strike Williams' response on May 31, 2011. (DE #43, 44). Williams filed a Response to the Motion to Strike on June 13, 2011. (DE #45). The motions are now fully briefed and ripe for adjudication.

DISCUSSION

Summary Judgment Standard

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406 (7th Cir. 2009). According to Rule 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). Furthermore, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it…" Fed. R. Civ. P. 56(e)(2),(3). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

Where a party bears the burden of proof on a particular issue, the party may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine dispute requiring a trial. *See Beard v. Whitley Cnty. REMC*, 840 F.2d 405, 410 (7th Cir. 1988); *Hickey v. A.E. Stanley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this

situation, there can be "no genuine dispute as to any material fact" because a complete failure of proof concerning an essential element of the nonmovant's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 323.

Horseshoe's Motion to Strike

Horseshoe filed a motion to strike Williams' response claiming that the response does not strictly comply with Local Rule 56.1. This rule provides that a party opposing a summary judgment motion "must include a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary." N.D. Ind. L.R. 56.1(b)(2). Plaintiff's Response has a section labeled "Disputed Facts," where she asserts that certain facts are in dispute, but does not contain a section labeled "Statement of Genuine Disputes." It is within the Court's discretion to require strict compliance with its local rules. *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 442 (7th Cir. 2011). Williams, however, complied in spirit with Local Rule 56.1; merely different words were chosen for the section label. Accordingly, this Court finds that Plaintiff's failure to strictly comply with Local Rule 56.1 does not justify striking the response brief.

Horseshoe has further argued that Williams' response fails to comply with Federal Rule of civil Procedure 56(c)(1), which requires that a party asserting that a fact is genuinely disputed must support that assertion with citations "to particular parts of materials in the record" or by "showing that the materials cited do not establish the

4

absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." While Williams' brief provides very few citations to the record, it does include *some* citations. To the extent that Williams has not disputed the well-supported facts contained in Horseshoe's statement of material facts, this Court will, pursuant to Federal Rule of Civil Procedure 56(e), consider those facts as undisputed. Because Rule 56(e) provides an adequate remedy to any lack of citations in Williams' response, it is not necessary to strike the response as a whole. Accordingly, the motion to strike is **DENIED**.

Facts

This Court has reviewed both Horseshoe's statement of material facts and the facts contained in Williams' response brief, and accepts the following facts as true for purposes of the instant summary judgment motion.

Williams visited Horseshoe Casino on November 12, 2008, with her boyfriend. At one point during the evening, Williams asked her boyfriend if he could watch her slot machine while she went to the restroom. As she walked from the restroom, she saw a different machine that interested her; she asked the person sitting near it if the machine was open and was told that the machine was being used. Williams went back to her machine and played.

While Williams was at Horseshoe Casino, at approximately 11:00 p.m., Horseshoe Security Supervisor, Tarrance Salter ("Salter"), contacted IGC agents by telephone about the possible theft of a

5

wallet.[1]  Agents Myiesha Spates ("Agent Spates") and Karl Madayag ("Agent Madayag") watched footage of the incident in Horseshoe's surveillance room.  The footage showed a woman fitting Plaintiff's description behaving suspiciously; she walked past a slot machine, looked down, paused, turned back and looked around, and then put her hand in her pocket and walked away.  Agent Spates instructed surveillance to investigate where the suspect went next.

Agent Spates met Horseshoe's Security Supervisor, Salter, on the casino floor.  Agent Spates was informed by Supervisor Salter that the missing wallet had been found in a bathroom, that everything except $35.00 remained in the wallet, and that the victim had filed a complaint and left the premises.

While on the casino floor, Agent Spates noticed a patron playing at a slot machine that fit the description of the suspect she had viewed on the surveillance tape. Agent Spates and another IGC officer approached Williams.  Agent Spates identified herself and inquired about the theft.  Williams and the two officers had a brief conversation about a theft.  Neither of the IGC officers yelled at Williams during this conversation.  According to Officer Spates' report, when approached, Williams took a step back, rolled her eyes, raised her voice and denied the theft.  Williams identified herself as an employee of the Westville Correctional Facility, and recited the

---

[1] While Williams asserts in her brief that Horseshoe provided the IGC with "false evidence" she does not state what, exactly, she believes was false about the information Horseshoe conveyed to the IGC.  At any rate, her assertion that the evidence was false is not supported by any citation to admissible evidence and is therefore disregarded.

6

phone number. Williams asserts that the IGC agents claimed they had called her employer.

Following this conversation, Officer Spates returned to review the surveillance videos to determine if the suspect was the same person she had just interviewed. She determined that Williams was indeed the person on the video. Eventually (Williams says hours after the initial conversation with IGC officers), three IGC officers returned to Williams' location and asked Williams to come to the IGC office for further investigation. She agreed to go with the officers, and was led to the office while flanked by two IGC officers. She was not handcuffed or under arrest. The walk to the room took, in Williams' words, "a little minute."

In the IGC office, Williams was asked to empty her pockets and questioned about the missing wallet. No one searched her person or purse (she was not carrying one). At one point, she was told she was going to jail. Following questioning, Williams was allowed to leave; at no point was she under arrest or placed in a holding cell. She was not denied food or water. No fines were levied against her. The only request that was denied was a request to call her boyfriend to inform him of what was going on.

The only people to discuss the theft with Williams were IGC agents; no one from Horseshoe was involved with the investigation, search or seizure. Once the incident was over, Williams spoke with someone from Horseshoe in an attempt to identify the three IGC agents, but Williams was told she would have to call the IGC. This individual

is the only person from Horseshoe that Williams spoke to on the day of the incident.

Following the interview with Williams in the IGC room, more video footage was found showing Williams entering and exiting the restroom where the wallet was found, and placing something in her pocket. Despite the evidence, Supervisor Drohosky determined upon further review that the video evidence was inconclusive in part due to camera angle and video quality, and that this shortcoming affected the feasibility of seeking to criminally prosecute Williams.

At her deposition, Williams stated that she believed that her First Amendment rights were violated because she was accused by the IGC agents of doing something she did not do. She stated that she is not claiming that the IGC and Horseshoe are engaged in a conspiracy. She indicated that she has never been prevented from participating in any political group or function or any religious groups or functions. She admits she was never formally evicted from a casino and that she could return to Horseshoe Casino if she chose to. In fact, there are no activities that she cannot now participate in as a result of the incident.

IGC agents are employed by the state of Indiana, not Horseshoe. The IGC agents were stationed at Horseshoe at the direction of their employer. Indiana law requires casinos to have two surveillance rooms; one to be used by Horseshoe employees and is known as the "surveillance room", and the other to be accessed only by the IGC and is known as the "Commission surveillance room."

8

Plaintiff's 42 U.S.C. § 1983 Claims

Plaintiff has alleged violations of her First, Fourth, Eighth, and Fourteenth Amendment rights; such allegations are brought under 42 U.S.C. § 1983. Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ...." *See* 42 U.S.C. § 1983). To establish a claim under § 1983, a plaintiff must show both that a constitutional right has been violated and that the alleged wrongdoer acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1987).

Although Plaintiff's complaint asserts claims under the First, Fourth, Eighth and Fourteenth Amendments of the Constitution, and Plaintiff's "disputed facts" section asserts that whether her First, Fourth, Eighth and Fourteenth Amendment rights have been violated are in dispute, Plaintiff's response brief addresses only her Fourth and Fourteenth Amendment claims. Because Plaintiff has failed to defend her First and Eight Amendment claims in her response to Defendant's Motion for Summary Judgment, those claims are waived. *Ienco v. Angarone*, 429 F.3d 680, 684 (7th Cir. 2005).

For Williams to prevail on any of her claims against Horseshoe (including those that were waived), she must demonstrate that Horseshoe acted under color of state law. For a private party such as Horseshoe to be held liable under 42 U.S.C. § 1983, "the state must somehow be responsible for the allegedly unlawful actions taken by the

9

party." *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996). "[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)(quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345 (1974)).

An action is "under color of state law" when the alleged wrongdoer acts by virtue of authority granted to him by the state; merely reporting a crime to the proper authorities does not usually subject a private citizen to liability under § 1983. *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989). In *Hughes*, Raymond Buss, a Wisconsin Department of Natural Resources ("DNR") conservation warden, radioed the Sauk County Sheriff Office for assistance because he was being held against his will by Raymond and Ronald Hughes while investigating illegal hunting on the Hughes' property. *Id*. at 968. The Seventh Circuit held that Buss could not be held liable under § 1983 for an alleged violation of the Fourth Amendment because, even though he was employed by the state, he was not acting under color of state law when he radioed the sheriffs for assistance; he was acting as a private citizen, reporting criminal conduct to the proper authorities. *Id*. at 972. The Court acknowledged that a private actor may be liable under § 1983 if there is "a conspiracy, an agreement on a joint course of action in which the private party and the state have a common goal." *Id*. (quoting *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 435 (7th Cir. 1986). But, Buss was not acting in concert with

the sheriffs to violate any of the Hughes' rights, and was therefore not acting under color of state law.

In this case, Williams' allegations against Horseshoe are quite limited. An employee of Horseshoe, Salter, notified the IGC of a possible theft. Salter also advised the IGC that the victim had left Horseshoe and that the wallet had been found. Horseshoe allowed the IGC agents to view its video surveillance material. IGC agents are the only ones that discussed the theft with Williams and are the ones who asked her to empty her pockets. Williams was not led to believe that any of the IGC agents were employed by Horseshoe.

Despite the very limited involvement of Horseshoe, Williams makes several arguments in an attempt to demonstrate that Horseshoe was acting under color of state law. Williams claims that Horseshoe's surveillance cameras, the cameras that recorded Williams' suspect activities, were "ordered installed by the State of Indiana" and that Horseshoe "willfully notified IGC agents of the video, knowing the video was inconclusive." (DE 42 at 8). Plaintiff further claims that the use of the surveillance cameras was a "power" "possessed by virtue of state law and made possible only because the wrong-doer is clothed with the authority of state law." (DE 42 at 9). These arguments are each without merit.

While casinos are regulated by the state, this does not make the casino a state actor. The Seventh Circuit has clearly stated this principle just recently, in an unpublished case. *Swanson v. Horseshoe Hammond, LLC*, 445 Fed. Appx. 868 (7th Cir. 2011)(stating in an unpublished opinion that "the power to detain and arrest is not

11

exclusively reserved to the government and by itself does not constitute state action…[a]nd neither does regulation by the state make Horseshoe Casino a state actor."). And, the Seventh Circuit's conclusion is consistent with that of other circuits. *See Lindsey v. Detroit Entertainment, LLC*, 484 F.3d 824, 831 (6th Cir. 2007)(noting in dicta that "we do not consider the fact that the state pervasively regulates casinos in itself to be sufficient to transform the actions of Defendant's employees, including Defendant's security personnel, into actions of the state."); *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 189 (3rd Cir. 2000)("State regulation and the CCC's authorization of casino activities do not transform the casinos into state actors.").

Additionally, the fact that Horseshoe complied with the law and had a surveillance room does not render Horseshoe's action under color of state law. If anything, Horseshoe's compliance with the law suggests submission to the law rather than a usurpation of state power. *See Smith v. Detroit Entertainment L.L.C.,* 338 F.Supp.2d 775, 783 (E.D. Mich. 2004)("Defendant's compliance with the requirements of the Michigan Gaming Commission Regulations was not a usurpation of state government authority but rather, a submission to it. Indeed, the security officers' early and complete deference to the authority of the State Police serves to demonstrate the private and limited character of their own authority.")

As for the assertion that the use of surveillance by Horseshoe was a "power" "possessed by virtue of state law and made possible only because the wrong-doer is clothed with the authority of state law,"

12

its hard to follow Williams argument at all.  One need not be clothed with the authority of state law to utilize surveillance equipment. Horseshoe could utilize surveillance equipment (and like would) even in the absence of regulations requiring its use.

The fact that the video was inconclusive hardly suggests that Horseshoes action could fairly be treated as that of the state.  One of Horseshoe's patrons reported a stolen wallet.  It possessed surveillance tapes of the area in which the wallet was allegedly taken.  It shared the fact of the reported theft as well as the video surveillance with the IGC.  The IGC took over from there.  Williams points to nothing suggesting that Horseshoe acted under color of state law by virtue of its surveillance tapes being deemed inconclusive by an employee of the IGC.  Any such conclusion would be nothing short of irrational.

In the instant case, Plaintiff has conceded that she is not alleging a conspiracy between the IGC and Horseshoe.  Even in the absence of this concession, the record would not support a finding that Horseshoe conspired with IGC officers to deprive Williams of her rights, or that Horseshoe willfully participated in joint activity with the state.  Williams has not produced any evidence that shows that the state delegated a public function to Horseshoe or that Horseshoe was directed or controlled by the IGC.

Contrary to Plaintiff's suggestion, the Indiana Gaming Commission Case Report does not establish that Horseshoe acted under color of law.  Rather, the undisputed facts in this case, taken in the light most favorable to Williams, fail to demonstrate any basis for deeming

13

Horseshoe's action to be under color of law.  Accordingly, each of Williams' claims against Horseshoe must fail.

CONCLUSION

    For the reasons set forth above, the Defendant Horseshoe Hammond, LLC's Motion for Summary Judgment is **GRANTED** and the Motion to Strike Plaintiff's Memorandum in Opposition to Horseshoe Hammond, LLC's Motion for Summary Judgment is **DENIED**.

**DATED:    March 7, 2012**                    /s/ RUDY LOZANO, Judge
                                                                **United States District Court**